IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| CHARLES GANSKE | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case 1:19-cv-06943-RA |
| LOUISE DAPHNE MENSCH | ) ) ) | |
| Defendant. | ) ) | |

# **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Milo Silberstein (MS4637)
DEALY, SILBERSTEIN & BRAVERMAN, LLP
225 Broadway, Suite 1405
New York, NY 10007
*Counsel for the Plaintiff*

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
*Of Counsel for the Plaintiff*
*(Application for Admission Pro Hac Vice*
*To be Filed)*

## **TABLE OF CONTENTS**

**TABLE OF CONTENTS**……………………………………………………………ii

**TABLE OF AUTHORITIES**……………………………………………………….iii

**I. INTRODUCTION**……………………………………………………....……..1

**II. STANDARD OF REVIEW**……………………………………………..…..…2

**III. BACKGROUND**……………………………………………………...….….3

**IV. DISCUSSION**……………………………………………………………8

**V. CONCLUSION AND REQUEST FOR RELIEF**……………………………14

# TABLES OF AUTHORITIES

**Cases**

*A.B.C. Needlecraft Co. v. Dun & Bradstreet, Inc.,* 245 F.2d 775 (2nd Cir. 1957) ............................ 13

*AdvanFort Co. v. Maritime Executive, LLC*, 2015 WL 4603090 (E.D. Va. 2015) ....................... 12

*Amaranth LLC v. J.P. Morgan Chase & Co.*, 888 N.Y.S.2d 489 (App. Div. 2009) ………………..12

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ............................................................................................. 2

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ............................................................................ 2

*Biro v. Condé Nast*, 883 F.Supp.2d 441 (S.D.N.Y. 2012) ............................................................... 8

*Conley v. Gibson,* 355 U.S. 41 (1957) .............................................................................................. 2

*Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308 (5th Cir. 1995) ............................................... 12

*Enigma Software Group USA, LLC v. Bleeping Computer, LLC*, 194 F.Supp.3d 263 (S.D.N.Y. 2016) ...... 10

*Eramo v. Rolling Stone, LLC*, 2016 WL 5234688, at * 5 (W.D. Va. 2016) .................................. 12

*Greene v. Paramount Pictures Corp.*, 138 F.Supp.3d 226, 236 (E.D.N.Y. 2015) .......................... 10

*Gross v. New York Times Co.*, 82 N.Y.2d 146, 152-154, 603 N.Y.S.2d 813, 623 N.E.2d 1163 (1993) ......... 9

*Harris v. City of Seattle*, 152 Fed.Appx. 565, 568 (9th Cir. 2005) ................................................. 12

*Hudnall v. Sellner*, 800 F.2d 377, 382 (4th Cir. 1986) ................................................................... 11

*John Langenbacher Co. v. Tolksdorf*, 605 N.Y.S.2d 34, 35 (App. Div. 1993) .............................. 14

*Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2nd Cir. 2006) ................................................. 13

*Nunes v. Twitter*, Case CL19-1715 (Henrico County Virginia) ..................................................... 2

*P&G Auditors and Consultants, Inc. v. Mega International Commercial Bank Co., Ltd.*, 2019 WL 4805862 (S.D.N.Y. 2019) ................................................................................................................. 8,13

*Palin v. New York Times Company*, 940 F.3d 804 (2nd Cir. 2019) ................................................ 8

*Liberman v. Gelstein*, 80 N.Y.2d 429 (1992) .................................................................................. 9

*Stern v. Cosby*, 645 F.Supp,2d 258 (S.D.N.Y. 2009) ...................................................................... 8

Plaintiff, Charles Ganske ("Plaintiff"), by counsel, respectfully submits this Memorandum in Opposition to the motion to dismiss pursuant to Rule 12(b)(6) filed by defendant, Louise Mensch ("Defendant") [*ECF No. 22*].

## I. **INTRODUCTION**

This defamation action arises out of a July 27, 2018 tweet published by the Defendant to millions on Twitter. In her tweet, Defendant falsely accused Plaintiff of "clearly personally spreading Russian bots on your own site", writing a "xenophobic" tweet, and engaging in "frenz[ied] tweeting" to "discredit" work done by a third-party. At the time of Defendant's publication, Plaintiff was a journalist employed by the Associated Press ("AP"). Defendant intentionally tagged Plaintiff's employer on the tweet. As a direct and proximate result of Defendant's false statements, AP terminated Plaintiff's employment. [*ECF No. 1 ("Complaint"), ¶¶ 1, 2, 10, 11, 12, 13, 17*].

On July 25, 2019, Plaintiff filed a two-count complaint, alleging claims of defamation and tortious interference with contract. In his complaint, Plaintiff seeks money damages for the insult, pain, embarrassment, humiliation, mental suffering, injury to his name and reputation, and loss of business and income caused by Defendant's defamation and tortious interference with contract. [*Complaint, ¶ 2*].

The matter is before the Court on Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). [*Complaint, ¶¶ 3. 4, 5*]. For the reasons stated below, the Court should deny Defendant's motion to dismiss.

1

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).[1]

---

[1] Defendant's motion to dismiss relies heavily, indeed almost exclusively, on matters outside the complaint. In accordance with Rule 12, the Court should convert the motion to one for summary judgment and deny the motion without prejudice. Discovery is obviously necessary to resolve this matter. Defendant's motion is also noteworthy in that refers to other cases being handled by Plaintiff's counsel, Mr. Biss, and cites to newspaper articles and blogs referring to these other cases as "slapp" suits. Quoting a blogger, Defendant's counsel suggests that the "common thread running through these and the other similar SLAPP/defamation suits Mr. Biss has brought, including this one against Ms. Mensch, is a deliberate and calculated attempt to 'silence and intimidate [his client's] critics.'" **Nothing could be further from the truth**. Each of the unrelated lawsuits referred to by Defendant's counsel in footnote 6 stands on its own. None has been dismissed. In fact, in one of the lawsuits, *Nunes v. Twitter*, Case CL19-1715 (Henrico County Virginia), the Court **denied** the defendants' motions to

### III. BACKGROUND

Plaintiff is a journalist. He graduated with honors in 2004 from the University of Texas-Austin. Between 2005 and 2007, he worked as an editor and grant writer for the Discovery Institute in Seattle, Washington. As part of his job, he edited a website, [www.russiablog.org](www.russiablog.org), wrote press releases, authored op-eds, and assisted in drafting fundraiser letters and grant applications. After working in the securities and insurance industries for a few years, he returned to journalism. Between March 2011 and March 2016, he was employed as Central Region Broadcast News Editor for the AP in Chicago, Illinois, where he covered breaking news for broadcast customers across the AP's 14-state Central U.S. region; developed content and daily news items for the territory stretching from Illinois to Texas; prepared the morning drive time items for all AP state lines radio subscribers and smartphone (Google and Apple formats) audio app users; reported on Midwestern issues with global implications, from Keystone XL pipeline controversy to drought conditions and impact on Mississippi River shipping, food prices; coordinated with AP bureaus in Atlanta, New York, Los Angeles, Phoenix, Philadelphia, Washington D.C., London and Moscow regarding news tips and stories of interest to the global wire service; and assisted colleagues in coverage of 2014 Sochi Winter Olympics. Between April 2016 and April 2017, Plaintiff served the AP as its National Sports Broadcast Editor. In this capacity, he produced content for multimedia projects and broadcast member stations/AP smartphone app users on NCAA athletics, MLB, NFL, NBA, NHL, Major League Soccer/European Champions League and English Premier League exhibition matches in the USA, rugby, PGA/LPGA, Mixed Martial Arts (MMA),

---

dismiss. Plaintiff's counsel does not intend to respond further to the professional attacks or the unrelated cases.

horse racing, IndyCar, NHRA, drag racing and NASCAR.  He was one of the first AP broadcast editors to work with artificial intelligence content.  Between April 2017 and August 10, 2018, Plaintiff was the AP's Social Media/User-Generated Content (UGC) specialist in Chicago.  He identified and verified social media video and photo content using Twitter, Facebook, Instagram and other platforms for the AP; geo-located breaking news; gathered and published content directly to Twitter, Instagram and Facebook in a fast-paced, 24/7 newsroom environment; contacted content rights holders and obtained non-exclusive releases of their video and photos to the AP; analyzed social media trends and identified original sourcing of content for fact checking; and collaborated with colleagues at New York HQ desk, U.S. regional desks, London, Asia, Latin America to investigate and prepare stories for APTN.  In his seven-and-one half years with the AP, Plaintiff received positive evaluations from his colleagues in Chicago and London for his UGC work and dedication to acquiring user generated content with tact and professionalism.  Until he was smeared by Defendant, Plaintiff enjoyed an untarnished reputation in the journalism industry. [*Complaint, ¶ 8*].

Defendant is a former member of the U.K. Parliament.  She was the editor of a "news" site called "Heat Street" until December 2016, when she parted ways with News Corp. (the owner of "Heat Street") due to her extreme and excessive use of Twitter.  According to the complaint, Defendant holds certain unorthodox views.  For instance, she "absolutely believes" that Russian intelligence planted Hillary Clinton's e-mails on Anthony Weiner's laptop; that Russian President Vladimir Putin had Andrew Breitbart killed to allow for Steve Bannon to ascend at Breitbart; and that a number of journalists, public figures, and Twitter users are "Putinbots," "Kremlin shills," or otherwise "agents

of Russia" and Vladimir Putin. [https://www.vanityfair.com/news/2017/07/twitter-verification-problem]. The complaint describes Defendant as a "propagandist", a "conspiracy queen", "InfoWars of the left" – a social media grifter who trolls Twitter and claims to expose "Russian" influence on and off the platform. Plaintiff alleges that the Defendant maintains and operates multiple Twitter accounts, including **@LouiseMensch** and **@patribotics**, and that she uses Twitter to troll for targets on whom she unleashes "Twitter bombs." [*Complaint, ¶¶ 4, 9, 14*].

In 2018, Defendant, while trolling Twitter, came across a conversation (referred to as a "thread" in Twitter parlance) between Plaintiff and "@Conspirator0". Defendant interjected herself. Plaintiff alleges that on July 27, 2018, Defendant published a tweet that contained multiple false statements of fact about Plaintiff. According to Plaintiff's complaint, Defendant falsely stated that Plaintiff "personally spread Russian bots" in order to impugn Plaintiff's character and associate him with "Russian" intermeddlers and propagandists. Plaintiff claims that Defendant knew that her characterization of Plaintiff would immediately create reputational risk for the AP. In fact, Plaintiff alleges that Defendant has a habit and routine practice of targeting persons with false claims that they are associated with Russians or Chinese. On June 30, 2019, for instance, she fraudulently claimed in a tweet that Michael Coudrey's organization, NewRightUS, was hosted by "Russian and Chinese intelligence architecture". Plaintiff's complaint alleges that Defendant has published hundreds of tweets in which she refers to "Russian bots". According to Plaintiff, these tweets confirm that Defendant believes that "Russian bots" engage in malicious and nefarious action, *see, e.g.*:

https://twitter.com/LouiseMensch/status/1144089471392124928
("Google Trends shows us 'Trolls for Tulsi' is swamping its algorithm by giving us results proving Russian bots still control searches");

https://twitter.com/LouiseMensch/status/930770458840006656
("UK tweeps should know: Jeremy Corbyn also benefited from Russian propaganda in the General Election and if he knowingly cooperated, he should be arrested, like anybody in #Brexit who knowingly colluded. @ me all you want; I broke Russian bots for Brexit last year");

https://twitter.com/LouiseMensch/status/930108672608538625
("My piece of last year that broke the "Russian Bots For Brexit" story included alt-right Russian bots posting in EVERY EU language; examples for Le Pen and Orban https://archive.is/vwzKn");

https://twitter.com/LouiseMensch/status/826107908031123457
("Russian bots have scripted signatures again.  Parliament sucks at allowing this attack on our democracy from Russia");

https://twitter.com/LouiseMensch/status/1055827583491694592
("Many Bots are saying that it sucks to be RU, Traitor.  Because Russian bots are your favorite, and you're scared of the midterms without enough of them to push your propaganda.  You're getting impeached, you know that, right?  Democrat House = Rule of Law");

https://twitter.com/LouiseMensch/status/826813017958539264
("This is a line pushed by Russian bots, who'd like us to give up.  We won't");

https://twitter.com/LouiseMensch/status/869324899038494720
("Half Trump's tweets likes etc come from Russian bots.  There are 18,000 on this tweet from @Evan_McMullin from actual Americans");

https://twitter.com/LouiseMensch/status/826111031101575168
("Attacked by @4Chan and attacked by Fancy Bear = exactly the same thing. Fake Trump petition added to by Russian bots");

https://twitter.com/LouiseMensch/status/891322012102217728
("With this in search bar you can see Russian bots, created by AI Watson for Team Jared, in real time #OSINT");

https://twitter.com/LouiseMensch/status/998967727355301888
("Rosenstein and Sessions just neutralized Horowitz.  On the surface, big win for that Comey-McCabe hater, pushed, as he was, by Russian bots from December 2016.  But actually, a huge, huge loss for @realDonaldTrump's last line of defense.  The new special prosecutor is now a witness");

6

> https://twitter.com/LouiseMensch/status/980765077891698689
> ("My sources with links to UK intelligence, and these are senior sources, have NEVER MENTIONED Aggregate IQ as being a concern. They know Russian bots and memes targeted and threw #Brexit");
>
> https://twitter.com/LouiseMensch/status/992161292956979208
> ("A simple twitter search on Horowitz Inspector going back to December 2016 will see Russian bots pushing him from the start; anybody may replicate this");
>
> https://twitter.com/LouiseMensch/status/1009897719173808128
> ("@ other people with your bullshit distraction.  As @MarkWarner tells us, this hysteria is being fed by Russian bots.  And POTUS @counterchekist says the same.  Enough. Russia. Russia. Russia").

Plaintiff asserts that Defendant has never used the phrase "Russian bots" in a manner that is not odious or contemptuous.  When Defendant associated Plaintiff with "Russian bots", Plaintiff contends that she intended to state or imply that Plaintiff was engaged in malicious and nefarious acts using these automated "Russian" computer systems.  The complaint is clear that prior to publication of her false and defamatory statements, however, Defendant knew that all of Plaintiff's work for the Discovery Institute was funded by Americans in the United States, and Plaintiff never spread Russian bots on any website. [*Complaint, ¶¶ 4, 9, 14*].

In his complaint, Plaintiff alleges that Defendant knew that Plaintiff worked for the AP.  On her tweet, she deliberately tagged Plaintiff's employer, "@AP", and published the tweet to "@APCentral" in order to interfere with and prejudice Plaintiff in his employment and get Plaintiff fired.  Plaintiff claims that Defendant's statement that Plaintiff "personally spread Russian bots" falsely implies that Plaintiff employed deceptive means and used fake accounts ("Russian bots") to spread disinformation online, and that Plaintiff used his "own site" to promote the interests of the Kremlin, Russian security services or Russian oligarchs.  The complaint states that Defendant's

7

statements impute to Plaintiff – a journalist – dishonesty, deception, bias, unethical behavior, and conduct that violated AP's code of conduct.[2] [*Complaint, ¶¶ 12, 13*].

On August 10, 2018, AP terminated Plaintiff's employment. Plaintiff alleges that his termination was "because of Mensch's tweets." [*Complaint, ¶ 17*].

## IV. DISCUSSION

### A. *COUNT I – Defamation*

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Biro v. Condé Nast*, 883 F.Supp.2d 441, 456 (S.D.N.Y. 2012). Under New York law, to recover on a libel claim, a plaintiff must establish the following elements: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Company*, 940 F.3d 804, 809 (2nd Cir. 2019) (citing *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 176 (2nd Cir. 2000)). A statement is defamatory *per se* if it "tend[s] to injure [the plaintiff] in his or her trade, business or profession." *P&G Auditors and Consultants, Inc. v. Mega International Commercial Bank Co., Ltd.*, 2019 WL 4805862, at * (S.D.N.Y. 2019) (quoting *Stern v. Cosby*, 645 F.Supp,2d 258, 273 (S.D.N.Y. 2009)

---

[2] The AP's News Values and Principles emphasize that it is a reporters "job – more than ever before – to report the news accurately and honestly … In the 21st century, that news is transmitted in more ways than ever before – in print, on the air and on the Web, with words, images, graphics, sounds and video. But always and in all media, we insist on the highest standards of integrity and ethical behavior when we gather and deliver the news. That means we abhor inaccuracies, carelessness, bias or distortions. It means we will not knowingly introduce false information into material intended for publication or broadcast". Plaintiff alleges that Defendant's statements accused Plaintiff of violating multiple AP standards. https://www.ap.org/about/news-values-and-principles/].

8

(quoting *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992)). If a statement is defamatory *per se*, injury is assumed. *Celle*, 209 F.3d at 179.

In determining whether a statement is a factual assertion – as opposed to a nonactionable opinion – the Court considers three factors: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." Application of these three factors is not rigid and mechanical, and no single factor is dispositive. *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152-154, 603 N.Y.S.2d 813, 623 N.E.2d 1163 (1993).

### 1. *Defendant's Statements Are Actionable*

Viewed in context and as a whole and considering the three *Gross* factors, the following statements alleged in Plaintiff's complaint are actionable:

- "**To this xenophobic tweet of yours, sir, I fear we must tell @APCentral**"
  [*Complaint, ¶ 10*]

  Defendant accuses Plaintiff of publishing a "xenophobic" tweet. A "xenophobe" is a person who is "unduly fearful of what is foreign and especially of people of foreign origin". [https://www.merriam-webster.com/dictionary/xenophobic].

  Plaintiff is not a xenophobe. A cursory review of his tweet, a screenshot of which is captured in paragraph 10 of the complaint, reveals that he is not xenophobic. By stating that "we must tell @APCentral" – Plaintiff's employer – Defendant implies that Plaintiff's "xenophobic tweet" violated AP's standards and policies.

- "**You clearly personally spread Russian bots on your own site**"
  [*Complaint, ¶ 10*]

9

>   This portion of the tweet falsely states or implies that Plaintiff used "Russian bots" to spread false information on the Internet. [https://www.motherjones.com/media/2018/08/how-to-identify-russian-bots-twitter/].
>
>   When viewed against the backdrop of Defendant's historic use of Twitter and her prior tweets about Russians, the reference to "Russian bots" had only one purpose – to associate Plaintiff with the spread of disinformation.
>
> - **"@Conspirator0['s] work on it has sent you into a frenzy of tweeting and trying to discredit him"**
>   [*Complaint, ¶ 10*]
>
>   This portion of Defendant's tweet falsely accuses Plaintiff of misusing his AP Twitter account to discredit users of Twitter. This imputes to Plaintiff an unfitness to perform the duties of his employment and prejudiced Plaintiff in his employment with AP.

Each of the statements published about Plaintiff is defamatory *per se* because each statement tends to injure Plaintiff in his trade or business. [*Complaint, ¶ 21*].

### 2.     *Plaintiff Alleges The Requisite Level of Fault*

The requisite level of fault varies depending on the status of the parties and the content of the statement. Where the plaintiff is a private individual, but the content of the statement is "arguably within the sphere of legitimate public concern," the defendant will not be liable unless she "acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Enigma Software Group USA, LLC v. Bleeping Computer, LLC*, 194 F.Supp.3d 263,267 (S.D.N.Y. 2016). If the plaintiff is a private individual and the statement does not concern the public, the gross irresponsibility standard does not apply, and negligence will suffice. *Greene v. Paramount Pictures Corp.*, 138 F.Supp.3d 226, 236 (E.D.N.Y. 2015).

10

Plaintiff is a private individual. [*Complaint, ¶ 23*]. The statements published by Defendant do not concern the public. The complaint alleges that Defendant "lacked reasonable grounds for any belief in the truth of her statements, and, at the very least, acted negligently in failing to determine the true facts." [*Complaint, ¶ 25*].

Even is the "gross irresponsibility" standard applied, Plaintiff meets the higher bar. Plaintiff cites numerous inter-related bases in support of his contention that Defendant acted with actual malice. [*Complaint, ¶ 24*].

1. Defendant intentionally fabricated the "Russian bots" story out of whole cloth. She published a preconceived and premeditated narrative that she knew to be false, and intentionally employed a scheme or artifice to defame Plaintiff and connect him to Russian disinformation. *See Hudnall v. Sellner*, 800 F.2d 377, 382 (4th Cir. 1986) (jury found that the defendant "concocted the accusations out of whole cloth").

2. Defendant abandoned any and all journalistic standards in tweeting about Plaintiff.

3. Defendant was in possession of information that demonstrated that her statements about Plaintiff were false. For instance, Defendant knew that ***all*** of the funding for www.russiablog.org came from American sources.

4. Defendant targeted Plaintiff. She did not know him. She exhibited spite and ill-will towards for Plaintiff. She chose to manufacture and publish false and scandalous statements and use insulting words that were unnecessarily strong and that constitute violent, abusive, hateful, sensational language, disproportionate to the occasion. The words chosen by Defendant evince her ill-will, spite and actual malice. *Celle*, 209 F.3d at 186 ("Plaintiff introduced sufficient circumstantial evidence to

establish clearly and convincingly that defendant Pelayo entertained serious doubts about the truth of the headline 'US judge finds Celle 'negligent.'' This conclusion is based in part on evidence indicating ill will and personal animosity between Celle and Pelayo at the time of publication"); *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 315 fn 19 (5th Cir. 1995) ("[E]vidence of ill will can often bolster an inference of actual malice."); *id. AdvanFort Co. v. Maritime Executive, LLC*, 2015 WL 4603090, at * 8 (E.D. Va. 2015) ("If, in fact, TME knew of the bad blood between Plaintiffs and Defendant Cartner, it would have indeed had obvious reason to doubt Cartner's veracity and the accuracy of his statements given the blatantly hostile and sarcastic tone of the Article.").

5. Defendant tagged Plaintiff's employer out of a desire to hurt Plaintiff and to get him fired.

6. Defendant has a habit and routine practice of maligning her targets by associating them with Russia or China, and suggesting that they are engaged in nefarious activity. That's precisely what Defendant did here. She manufactured false statements as part of a preconceived story that Plaintiff, an AP journalist, had spread misinformation on "his own" website. *Eramo v. Rolling Stone, LLC*, 2016 WL 5234688, at * 5 (W.D. Va. 2016) ("evidence that a defendant conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice, and may often prove to be quite powerful evidence.") (quoting *Harris v. City of Seattle*, 152 Fed.Appx. 565, 568 (9th Cir. 2005)).

7. The Defendants failed to investigate known and obvious facts, such as whether the Virginia State Bar was coming after Plaintiff. *See Eramo*, 2016 WL 5234688, at * 6 ("a reasonable jury could conclude that Erdely should have investigated

12

further, and that her failure to do so could imply that Erdely acted with actual malice."); *A.B.C. Needlecraft Co. v. Dun & Bradstreet, Inc.*, 245 F.2d 775, 777 (2nd Cir. 1957) (the failure to verify, when verification would have been a "simple matter," rises to the level of "wanton and reckless disregard for the rights of another").

### B.    COUNT II – Tortious Interference

"Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third[]party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *P&G Auditors and Consultants*, 2019 WL 4805862 at * 7 (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2nd Cir. 2006)).

Plaintiff alleges each of the elements of a cause of action for tortious interference with contract. [*Complaint, ¶¶ 17, 28, 29, 30, 31*]. The complaint expressly states that Defendant knew Plaintiff was employed by the AP. This is borne out by Defendant's July 27, 2018 tweet, where she tags Plaintiff's employer. The complaint states that Defendant knowingly communicated false statements about Plaintiff to Plaintiff's employer that caused the AP to terminate Plaintiff. Knowingly false "[d]isparagement [that] impugn[s] the basic integrity ... and competence" of a person is more than sufficient, under New York law, to show the requisite culpability to sustain a tortious interference claim. *See P&G Auditors and Consultants*, 2019 WL 4805862 at * 7 (quoting and citing *John Langenbacher Co. v. Tolksdorf*, 605 N.Y.S.2d 34, 35 (*John Langenbacher Co. v. Tolksdorf*, 605 N.Y.S.2d 34, 35 (App. Div. 1993) and *Amaranth*

13

*LLC v. J.P. Morgan Chase & Co.*, 888 N.Y.S.2d 489. 495 (App. Div. 2009). Accordingly, Plaintiff has adequately stated a claim for tortious interference with contract.

## **CONCLUSION AND REQUEST FOR RELIEF**

For the reasons stated above, Plaintiff respectfully requests the Court to deny Defendant's motion to dismiss.

DATED:   January 3, 2020

Signature of Counsel on Next Page

Respectfully Submitted,

CHARLES GANSKE


By: <u>*/s/ Milo Silberstein*</u>
Milo Silberstein (MS4637)
DEALY, SILBERSTEIN & BRAVERMAN, LLP
225 Broadway, Suite 1405
New York, NY 10007
(212) 385-0066
Fax: (212) 385-2117
Email: MSilberstein@dealysilberstein.com

*Counsel for the Plaintiff*

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:      (804) 501-8272
Facsimile:       (202) 318-4098
Email:              stevenbiss@earthlink.net

*Of Counsel for the Plaintiff
    (Application for Admission Pro Hac Vice
    To be Filed)*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2020 a copy of the foregoing was served electronically via email in PDF upon counsel for the Defendant.

By: */s/ Milo Silberstein*
Milo Silberstein (MS4637)
DEALY, SILBERSTEIN & BRAVERMAN, LLP
225 Broadway, Suite 1405
New York, NY 10007
(212) 385-0066
Fax: (212) 385-2117
Email: MSilberstein@dealysilberstein.com

*Counsel for the Plaintiff*

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:   (804) 501-8272
Facsimile:    (202) 318-4098
Email:          stevenbiss@earthlink.net

*Of Counsel for the Plaintiff*
   *(Application for Admission Pro Hac Vice*
   *To be Filed)*